578 F.2d 713
 Fed. Sec. L. Rep. P 96,466
Maurice M. VERVAECKE, Appellant,
v.
CHILES, HEIDER & CO., INC., Dean Witter & Co., Incorporated,
Arthur Young & Company, Northwestern National Bank, Hospital
Authority No. 1 of Sarpy County, Nebraska and Midlands
Community Hospital, Appellees.
 No. 77-1923.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1978.
Decided June 9, 1978.
 
 John P. Kanouff of Hopper & Kanouff, Denver, Colo., for appellant; Steve A. Miller, Denver, Colo., August Ross of Ross & Mason, Michael McCormack of McCormack, Cooney & Mooney and Daniel G. Dolan, Dolan & Dinsmore, Omaha, Neb., on briefs.
 Edward W. Keane of Sullivan & Cromwell, New York City, for appellees; Chiles, Heider & Co., Inc., Dean Witter & Co., Inc., Eugene L. Pieper, Omaha, Neb., Michael Winger, New York City and Donald F. Burt, Lincoln, Neb., on briefs.
 C. L. Robinson and Lyle E. Strom, Omaha, Neb., John Matson and Carl D. Liggio, New York City, Michael G. Brady, Omaha, Neb., Phil M. Cartmell, Jr., Kansas City, Mo. and Dixon G. Adams, Papillion, Neb., on brief for appellees, Arthur Young, Northwestern Nat. Bank, Hospital Authority No. 1 of Sarpy County, Neb. and Midlands Community Hospital.
 Before BRIGHT and ROSS, Circuit Judges, and MEREDITH, District Judge.*
 ROSS, Circuit Judge.
 
 
 1
 In March 1974 the appellant Maurice M. Vervaecke purchased eight corporate bonds for a total of $40,000 which are the subject of the allegations of securities fraud in this case. The bonds were authorized by the defendant- appellee Hospital Authority, a corporate entity created pursuant to Nebraska law, for the construction of the Midlands Community Hospital in Sarpy County, Nebraska. Bonds for the hospital were issued in two series, Series 1973 and Series 1976; appellant Vervaecke purchased only the former bonds, though he seeks to represent allegedly defrauded bond purchasers of both series of bonds as a class action representative. Vervaecke purchased seven bonds from Lamson Brothers & Co., which is not a defendant, and one bond from defendant Chiles, Heider & Co.
 
 
 2
 The defendants-appellees, in addition to Midlands Community Hospital and the Hospital Authority, are described in the complaint as follows: Arthur Young & Company, a partnership, is the auditor and independent public accountant for the hospital; Dean Witter & Co. is a securities broker-dealer, and "acted as one of the principal underwriters of the Bonds"; Chiles, Heider & Co., Inc., likewise is a broker-dealer who "acted as one of the principal underwriters of the Bonds"; finally, defendant Northwestern National Bank acted as trustee for the holders of the Bonds.
 
 
 3
 The complaint in the court below cites several bases for the defendant's alleged liability, but the legal focal point on this appeal is section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b-5 promulgated thereunder. See 17 C.F.R. § 240.10b-5. Vervaecke seeks compensation for the bonds' decline in value, measured by the difference between their cost and their present fair and reasonable market value. He now appeals the adverse summary judgment on the issue of liability entered by the trial court. We affirm.
 
 
 4
 Under Section 10 of the 1934 Act it is "unlawful for any person * * * (b) To use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).
 
 
 5
 Under the authority of § 10(b), the Commission devised Rule 10b-5, which provides:
 
 
 6
 Employment of manipulative and deceptive devices.
 
 
 7
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 
 
 8
 (a) To employ any device, scheme, or artifice to defraud,
 
 
 9
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 
 
 10
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 
 
 11
 in connection with the purchase or sale of any security.
 
 
 12
 "The gravamen of a § 10(b) and Rule 10b-5 cause of action is fraud, viz. manipulation or deception." St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 562 F.2d 1040, 1048 (8th Cir. 1977), cert. denied, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978).
 
 
 13
 Though several elements comprise the Rule 10b-5 cause of action, the dispositive issue here, as in St. Louis Union Trust, supra, 562 F.2d 1040, is causation in fact.
 
 
 14
 In order to prevail in an action for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must show some causal nexus between the defendant's wrongful conduct and his (the plaintiff's) loss. This requirement preserves the basic concept that causation must be proved else defendants could be held liable to all the world. Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 495 F.2d (228) at 239 (2d Cir.), quoting from, Globus v. Law Research Service, Inc., 418 F.2d 1276, 1292 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970).
 
 
 15
 Causation has been most often analyzed in terms of the Rule 10b-5 elements of materiality or reliance. * * * The element of reliance traditionally required proof that the misrepresentation or omission actually induced the plaintiff to act differently than he would have acted in his investment decision. See Myzel v. Fields, 386 F.2d 718, 735 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).
 
 
 16
 St. Louis Union Trust, supra, 562 F.2d at 1048 (footnote omitted) (emphasis added). See also Harris v. American Investment Co., 523 F.2d 220, 229 n.7 (8th Cir. 1975), cert. denied, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976).
 
 
 17
 Vervaecke has argued to this court, however, that a different reliance-causation rule found in Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) is applicable to this case; that positive proof of his reliance on the defendants' wrongful conduct as outlined above is unnecessary; that causation in fact may properly be presumed; and that the burden has now shifted to the defendants for clear proof of Vervaecke's nonreliance on the alleged wrongful conduct.
 
 
 18
 In Affiliated Ute, supra, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741, the Court held two bank employees liable for their role in defrauding Indian sellers of their stock in the Ute Distribution Corporation (UDC). The UDC was a corporation authorized by an unincorporated association of mixed-blood Ute Indians, the Affiliated Ute Citizens of the State of Utah (AUC). The UDC issued 10 shares of stock in the name of each mixed-blood Ute as part of a plan for the distribution of the mixed-bloods' assets, claims against the United States and gas, oil, and mineral rights, to individual members of the group. First Security Bank of Utah, pursuant to written agreement, became the transfer agent and depository for the shares, with the shareholders receiving receipts for the shares. The UDC stock had limitations which required the mixed-blood shareholder who wished to sell stock to first offer it for sale to other tribal members, and only after their refusal, to nonmembers. The stock also bore a warning that the stock was not that of an ordinary business corporation, that its future value could not be readily determined, and that the stock "should be retained and preserved for the benefit of the shareholder and his family." Affiliated Ute, supra, 406 U.S. at 138, 92 S.Ct. at 1464.
 
 
 19
 The two bank employees who were held liable for § 10b-5 fraud had devised a scheme to acquire UDC stock from mixed-bloods for less than fair value and without making full disclosures. Id. at 148, 92 S.Ct. 1456. As previously stated, the bank had possession of the UDC stock with the warning legend, and the two defendant employees processed the affidavits for the "first-refusal" procedure, which the district court found had been done "informal(ly) at best." Id. at 146, 92 S.Ct. 1456. During the two years in question mixed-bloods sold 1,387 shares to nonmembers of the tribe. The two employees, who purchased 8 1/3 percent of that total themselves, also had standing orders for stock from other non-Indian buyers, and received compensation for facilitating these sales.
 
 
 20
 The Court concluded that the bank employees had fraudulently failed to disclose their position as "market makers" for the stock:
 
 
 21
 It is no answer to urge that, as to some of the petitioners, these defendants may have made no positive representation or recommendation. The defendants may not stand mute while they facilitate the mixed-bloods' sales to those seeking to profit in the non-Indian market the defendants had developed and encouraged and with which they were fully familiar. The sellers had the right to know that the defendants were in a position to gain financially from their sales and that their shares were selling for a higher price in that market.
 
 
 22
 Affiliated Ute, supra, 406 U.S. at 153, 92 S.Ct. at 1472.
 
 
 23
 The Court analyzed the fraud in Affiliated Ute, the nondisclosure, under the first and third subparagraphs of Rule 10b-5, describing the defendants' activities as "a 'course of business' or a 'device, scheme, or artifice' that operated as a fraud upon the Indian sellers"; the Court observed that the scope of culpable conduct under the first and third subparagraphs was "not so restricted" as under the second subparagraph, which only proscribed the making of an untrue statement of a material fact or the omission of a material fact. Id. at 152-53, 92 S.Ct. 1456. Furthermore, the Court held that where the failure to disclose information was the principal fraud, the reliance requirement could be relaxed:
 
 
 24
 Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. (Citations omitted). This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.
 
 
 25
 Affiliated Ute, supra, 406 U.S. at 153-54, 92 S.Ct. at 1472 (emphasis added).[1]
 
 
 26
 This less stringent test of causation is functionally important in the case of material nondisclosure: "As Professor Bromberg has noted, 'reliance has little rational role' in cases of nondisclosure, largely because of the difficulty of proving reliance on the negative." The Reliance Requirement in Private Actions Under SEC Rule 10b-5, 88 Harv.L.Rev. 584, 590 (1975).
 
 
 27
 However, we do not think that dispensing with an initial showing of reliance and substituting a presumption of causation in fact in all kinds of 10b-5 fraud is necessary, and that it is not appropriate to apply the Affiliated Ute test to this case involving primarily misrepresentation under the second subparagraph of Rule 10b-5:[2]
 
 
 28
 Where the securities fraud at issue closely resembles the tort of deceit, the plaintiff encounters no special difficulty in attempting to demonstrate reliance. The lack of any barrier to proof permits the private action adequately to serve its dual purposes. However, in two situations where the law of 10b-5 has expanded beyond the traditional contours of the law of deceit fraud based upon nondisclosure rather than misrepresentation, and fraud effected through an impersonal market rather than face-to-face transactions dispensing with the need to prove reliance in order to demonstrate causation does seem to be appropriate. (Footnote omitted).
 
 
 29
 By contrast, in affirmative misrepresentation cases there is no need to presume reliance ; the lack of barriers to proof permits the compensatory and deterrent purposes to be adequately served by testing causation directly.
 
 
 30
 The Reliance Requirement in Private Actions Under SEC Rule 10b-5, 88 Harv.L.Rev. at 589, 591 (1975) (emphasis added).
 
 
 31
 While Vervaecke tries to present this case to us as a case involving primarily nondisclosure, we have carefully examined the pleadings and do not view it as such. Vervaecke's chief complaint concerned alleged material misrepresentations, and omissions in the nature of misrepresentations, in two specific documents, the 1973 and 1976 offering statements which accompanied the respective bond offerings. The complaint states:
 
 
 32
 13. The Defendants, singularly and in concert, by act and omission, prepared, reviewed, tolerated and distributed Offering Statements to Plaintiff and those individuals who originally purchased such Bonds, which contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made not misleading, which operated as a fraud and deceit on each purchaser in the manner and form set forth below:
 
 
 33
 (a) The untrue statements of material facts contained in the Offering Statements included the following:
 
 
 34
 (b) The material facts which the Defendant omitted to state which were necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, included the following:
 
 
 35
 (emphasis added).
 
 
 36
 Though other theories of this case might have been devised, we find that the thrust of what Vervaecke actually pleaded was the use of fraudulent misstatement and omission within the four corners of an offering prospectus which mislead him and other bond purchasers;[3] we share this understanding of the complaint with the district court.[4]
 
 
 37
 Since this is not a case in which Vervaecke may presume reliance, he was obligated to state facts sufficient to raise a genuine factual dispute with regard to his actual reliance on the misleading documents. The facts were insufficient in the estimation of the district court, and we agree, even viewing the record in the light most favorable to Vervaecke, as we are required to do. See generally Goodman v. Parwatikar, 570 F.2d 801, 803 (8th Cir. 1978). Reliance is a crucial element of Vervaecke's cause of action, and the statements he himself presented negate a genuine factual dispute. Concerning his receipt of and reliance on the offering statement Vervaecke states: that he first purchased bonds from Lamson Brothers & Co. (which is not a defendant); that Lamson Brothers did not provide him with anything to read prior to his purchase of the bonds; and, that Lamson Brothers "mails them folders (the offering statements) out about ten days after you buy them." (Emphasis added). Vervaecke recalled receiving one of these official statement books, but could not recall which broker, Lamson Brothers or Chiles, Heider & Co., sent it to him. Vervaecke stated that he knows he read the offering statement when he began to learn that there might be a problem with the bonds, but had no specific recollection of reading it before that.
 
 
 38
 In a subsequent affidavit, submitted to soften the effect of these statements from the deposition, Vervaecke states:
 
 
 39
 3. As I stated in my deposition I recall that I received an offering statement in connection with my purchase of the Series 1973 Bonds. As I stated in my deposition, I recall that I received this offering statement at about the time I purchased the bonds. As I stated in my deposition, it would be my best recollection that I read the offering statement at the time I received it. However, and again as I stated in my deposition, I do not recall whether I received the offering statement from Defendant Chiles Heider or from Lampson (sic) Brothers & Co. I do not recall the exact date that I received the offering statement, and I do not recall the specific details of the offering statement noted by me at that time.
 
 
 40
 The affidavit further stated that it is his practice to read all documents when he received them without exception.
 
 
 41
 We are unable to say that these statements submitted by the defrauded purchaser himself, which should be the best explanation of the use he made of the offering prospectus, create a genuine factual dispute necessitating a trial on the issue of reliance. The district court concluded:
 
 
 42
 (P)laintiff did not even see the offering statements until after the commitment to purchase the securities had been made. Clearly, plaintiff's determination was influenced primarily by factors personal to him and unrelated to the alleged misrepresentations and omissions.
 
 
 43
 We agree with this conclusion of the district court, but express no opinion as to which factors did induce Vervaecke to buy; we find, however, that causation in fact between the fraud complained of and Vervaecke's loss lacks support, and affirm the summary judgment granted below.
 
 
 44
 In addition to his individual claim, Vervaecke made class allegations, seeking to represent other 1973, and 1976, bondholders. The district court struck the class allegations from the complaint. We agree that it was proper to reject Vervaecke's claim to sue as class representative for the allegedly defrauded purchasers of 1976 issue bonds, even though Vervaecke correlates several similarities between the two bond offerings and the nature of the alleged fraud. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), sets forth a rigid rule of standing which limits the class of plaintiffs entitled to sue for violations of Rule 10b-5. Under the "Birnbaum " rule adopted by the Court in Blue Chip Stamps v. Manor Drug Stores, supra, 421 U.S. at 742, 95 S.Ct. at 1928, recovery is limited to "purchasers or sellers of the stock in question." Id. The plaintiff in the instant case neither dealt in the 1976 issue nor was he defrauded by the allegedly misleading 1976 offering statement. "The virtue of the Birnbaum rule, simply stated, in this situation, is that it limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates." Id. at 747, 95 S.Ct. at 1931.
 
 
 45
 Since Vervaecke could not in his own right make a claim with respect to the 1976 offering, we conclude he cannot represent a class of plaintiffs entitled to make a claim as to the 1976 bonds. "The plaintiff- or defendant-representative (in a class action suit) must be a member of the class which he purportedly represents." 3B Moore's Federal Practice P 23.04, at 23-254 (2d ed. 1977).
 
 
 46
 We also conclude that the district court did not abuse its discretion in striking the class allegations with respect to the 1973 bonds. "Under Rule 23 the district court is given broad discretion to determine the maintainability and the conduct of class actions." In re Cessna Aircraft Distributorship Antitrust Litigation, 518 F.2d 213, 215 (8th Cir.), cert. denied, 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282 (1975).
 
 
 47
 The trial court made its determination on a record which showed that plaintiff could not recover on his individual claim. For this and other reasons he was an inadequate class representative as required by Fed.R.Civ.P. 23(a)(4). "(T) he adequacy of representation issue is now of critical importance in all class actions and the court is under an obligation to pay careful attention to the Rule 23(a)(4) prerequisite in every case." C. Wright & A. Miller, Federal Practice & Procedure § 1765, at 616-17 (1972).
 
 
 48
 Here, as in East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the class representative's individual claim was determined to be nonmeritorious prior to determination of the class certification question. The Supreme Court held that the appeals court erred in certifying three would-be discriminatees as class representatives whose own claims were clearly shown to lack merit:
 
 
 49
 In short, the trial court proceedings made clear that Rodriguez, Perez, and Herrera were not members of the class of discriminatees they purported to represent. As this Court has repeatedly held, a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members. . . . The District Court found upon abundant evidence that these plaintiffs lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury.
 
 
 50
 Id. 403-04, 97 S.Ct. 1896 (footnote and citations omitted).
 
 
 51
 A recent opinion of this court found the East Texas Motor Freight holding to be consistent with existing precedent in the Eighth Circuit:
 
 
 52
 4 East Texas Motor Freight is consistent with the earlier decision of this Court in Wright v. Stone Container Corp., 524 F.2d 1058 (8th Cir. 1975). There, it was held that the named plaintiff's failure on the merits is a consideration in determining whether to remand for class proceedings. To remand, this Court held, would be "to foist upon the class a representative who would not himself be a member of the class." 524 F.2d at 1062.
 
 
 53
 Walker v. World Tire Corp., 563 F.2d 918, 922 n.4 (8th Cir. 1977).
 
 
 54
 Additionally, it is uncertain that Vervaecke will maintain interest in pursuing this litigation for the class without a successful claim himself. This consideration, relevant to adequacy of representation under Rule 23(a)(4), is present here where the plaintiff undertook class representation for the sole stated purpose of sharing the costs of a successful claim:
 
 
 55
 As I stated in my deposition, I stand ready, willing and able to bear costs of this action and to vigorously prosecute this action to its conclusion. I believe in doing so I will confer a benefit on the other Class members, but I believe that they should participate in the costs of obtaining this benefit. I brought this action as a Class Action for one reason and that is economic. I was informed by my legal counsel, through my son, that if I brought this action individually against the Defendants I might receive a judgment which was totally offset by costs of obtaining such judgment. However, by suing as a Class, all members, no matter how large or small their claim is, will proportionately share the costs of determining the liability of the Defendants, and share in any judgment. Without this potential sharing, this lawsuit would not have been economic to me. (Emphasis added).
 
 
 56
 In view of these factors, and the posture of the case when the individual claim was denied, we conclude there was no error in refusing to permit the plaintiff to act as a representative for the class.
 
 
 57
 Finally, the appellant argues that if in fact Vervaecke did not receive a copy of the offering statement from the defendant, that act constitutes in and of itself a per se 10b-5 violation. Appellees argue that this claim is not properly before this court in the first instance, and we agree. This argument was not pleaded in the complaint, was not addressed in the district court memorandum opinion, and was not addressed to the district court in the post-trial motion. Moreover, the claim is not implicit in the pleadings as it takes a tack opposite the main claim, which is that Vervaecke did receive and did rely upon a fraudulent offering statement.
 
 
 58
 Accordingly, the judgment dismissing Vervaecke's complaint is affirmed.
 
 
 
 *
 JAMES H. MEREDITH, Chief Judge, United States District Court, Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Court has reaffirmed use of this test "when a Rule 10b-5 violation involves a failure to disclose * * *." TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 447 n.9, 96 S.Ct. 2126, 2131, 48 L.Ed.2d 757 (1976) (emphasis added)
 
 
 [2]
 We conclude that misrepresentations, and omissions in the nature of misrepresentations (misleading statements, half-truths), are appropriately considered alike in this case under 10b-5(2). See generally A. Bromberg, Securities Law, Fraud SEC Rule 10b-5, 4.2, at 71 (1977). "While clause 2 proscribes material omissions when something is said, it is well established that the other clauses proscribe material omissions when nothing is said." Id. 8.2, at 197
 
 
 [3]
 Vervaecke makes one specific allegation against two of the defendants, Dean Witter and Chiles, Heider:
 
 
 [14]
 During the sale of the Series 1973 Bonds and Series 1976 Bonds to the members of the class who originally purchased such bonds and who purchased such bonds in the open market from such Defendants, Dean Witter and Chiles Heider made recommendations to members of such class to purchase such bonds without a reasonable basis for such recommendations
 However, no mention of this portion of the complaint is made on appeal, nor is it argued that the district court made an erroneous ruling on this aspect of the case which we should review.
 
 
 [4]
 The district court said: "Plaintiff's complaint alleges that all the defendants, singularly and in concert, by act and omission, prepared, reviewed, tolerated and distributed offering statements in 1973 and 1976 which contained material misrepresentations and omissions."
 We conclude that this is not a nondisclosure case, and will not compare the facts here with the facts in Affiliated Ute or with that case's frame of reference.