587 F.Supp. 625 (1983)
IN RE McDONNELL DOUGLAS CORPORATION SECURITIES LITIGATION.
MDL No. 448.
United States District Court, E.D. Missouri, E.D.
December 29, 1983.
*626 Robert M. Kornreich and Gary Canter, Wolf, Popper, Ross, Wolf & Jones, New York City, Sherrie R. Savett, Berger & Montague, P.A., Philadelphia, Pa., John C. Dods, Shook, Hardy & Bacon, Kansas City, Mo., Richard B. Dannenberg, Lowey, Dannenberg & Knapp, New York City, for plaintiffs.
Veryl L. Riddle, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Robert S. Allen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for defendants.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court on defendants' joint motion for summary judgment.
Plaintiff Pearlman alleges, on behalf of himself and a class of others similarly situated, that defendants violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (SEA), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated by the Securities and Exchange Commission (SEC). Plaintiff is a purchaser of McDonnell Douglas Corporation (MDC) common stock. Plaintiff's amended complaint alleges two claims. The first claim is that defendants failed to disclose to the investing public certain material adverse information relating to the business, finances, and operations of MDC. The second claim is that the individual defendants sold shares of MDC stock while possessing the undisclosed material information.
In particular, plaintiff alleges that on or about January 27, 1980, MDC reported its extremely favorable 1979 earnings, including the fourth quarter results. The fourth quarter earnings were reported to be up 18% on increased sales of 14% over the previous quarter. Profits for 1979 were reported to be up 24% over 1978 on a 28% increase in sales. MDC also announced an increase in its cash dividend to $.22½ per share, up from $.18¾ per share.
Plaintiff further alleges that, commencing by at least January 1, 1980, the financial and operating conditions of MDC were deteriorating in the following ways:
1. MDC was sustaining a serious cash drain as indicated by the fact that at June 30, 1980, its cash position had declined *627 to $73,000,000 from $327,000,000 at December 31, 1979, and $623,000,000 at September 30, 1979.
2. The program for the DC-9 Super 80 series aircraft, of critical importance to MDC's commercial strength, was incurring sharply increased development and production start-up costs. The DC-10 commercial aircraft, critical to MDC's commercial profitability, was sustaining drastic cuts in production rate and a material decline in orders.
3. Military production was also incurring marked cost increases. The Air Force's KC-10 tanker/cargo aircraft, a modified version of the commercial DC-10, began to sustain material cost increases in part as a result of the falling DC-10 production rate.
4. The cost of completion of KC-10 contracts and foreign DC-10 support contracts, and the start-up production and development costs of the DC-9 Super 80 series aircraft, had or would sharply exceed prior cost estimates.
The amended complaint then alleges that MDC and the individual defendants, who were officers and directors of MDC during the first quarter of 1980, knew of this adverse information, failed to disclose it, and engaged in a common course of conduct which operated as a fraud or deceit upon plaintiff. Plaintiff also alleges that the individual officers and directors violated the "disclose or abstain" rule, SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir.1968), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), by selling shares of MDC stock without disclosing the adverse information referred to above.
On or about April 21, 1980, MDC publicly announced its first quarter results indicating that operating earnings had fallen about 40% from 1979, and that the development and start-up costs on the DC-9 Super 80 series aircraft, as well as the production costs for the KC-10, had increased substantially during the first quarter. Earnings fell even though sales were up from the prior year. Plaintiff alleges that these disclosures caused a sharp drop in the price of MDC stock.
By their joint motion, defendants assert they are entitled to judgment as a matter of law (a) because plaintiff has not alleged or demonstrated actual reliance that defendants argue is required here, nor is plaintiff entitled to any presumption of reliance; and (b) because, as to his insider trading claims, plaintiff has failed to establish the required nexus between plaintiff's losses, if any, and the individual defendants' sales. Finally, defendants ask the Court to certify this matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) if the Court denies the motion in whole or in part.
To establish a claim under Rule 10b-5, plaintiff must demonstrate a purchase or sale of a security involving a device or scheme to defraud, a misrepresentation or omission or both, or a fraudulent business practice; scienter of defendants; and causation-in-fact, which encompasses materiality and reliance. See, e.g., St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 562 F.2d 1040, 1048 (8th Cir.1977), cert. denied, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978); Myzel v. Fields, 386 F.2d 718 (8th Cir.1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). Actual reliance must be alleged in misrepresentation cases brought pursuant to Rule 10b-5. See Vervaecke v. Chiles, Heider & Co., Inc., 578 F.2d 713, 717 (8th Cir.1978).[1] The *628 courts, however, have etched two exceptions to the requirement that plaintiff establish actual reliance: (1) where the litigation involves primarily nondisclosures, Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); and (2) where the litigation is based upon a "fraud-on-the-market" theory of recovery. See, e.g., Blackie v. Barrack, 524 F.2d 891, 906-07 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).
In Ute, supra, the United States Supreme Court held that, when defendants have an obligation to disclose and the circumstances involve primarily a failure to disclose,
positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a responsible investor might have considered them important in the making of this decision.... This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.
Id. 406 U.S. at 153-54, 92 S.Ct. at 1472 (citations omitted). In the Eighth Circuit, the Ute exception to the actual reliance requirement creates a rebuttable, rather than a conclusive, presumption of reliance. Continental Grain v. Pacific Oilseeds, Inc., 592 F.2d 409, 412 n. 1 (8th Cir.1979); Austin v. Loftsgaarden, 675 F.2d 168, 178 (8th Cir.1982).
Where the claims are hybrid, containing both nondisclosure and misrepresentation allegations, the district court may determine which type of claim predominates so as to allocate the parties' burdens in establishing reliance. Id. at 178 n. 21; Vervaecke, supra, 578 F.2d at 717-18. Plaintiff argues that, in light of the dual instruction on reliance approved by the Eighth Circuit in Austin, supra, this Court should wait until evidence is adduced at trial before determining which party has the burden.
While approving the dual instruction, the Eighth Circuit specifically noted
that a dual instruction on reliance is not the appropriate solution when confronted with a securities fraud case where both misrepresentations and omissions are present. We endorse [the Third C]ircuit's conclusion that "the proper approach to the problem of reliance is to analyze the plaintiff's allegations, in light of the likely proof at trial, and determine the most reasonable placement of the burden of proof of reliance." Sharp v. Cooper & Lybrand, 649 F.2d 175, 188 (3d Cir.1981).
Id. at 178 n. 21. Thus, it is appropriate to determine prior to trial whether or not the Ute presumption of reliance will apply. Here, plaintiff's allegations and deposition testimony, as well as relevant documents, indicate that the claims primarily focus on defendants' alleged failure to disclose material information. Thus, the Ute exception of reliance applies here.
Defendants urge the Court to determine that the Ute exception is limited to situations, allegedly unlike this case, where there is direct dealing and a duty to speak. By its very terms, the Ute exception requires the existence of a duty to disclose, a duty present here.
The Court, however, is not persuaded that direct dealing is a prerequisite to application of the Ute exception. Numerous courts have analyzed circumstances not involving direct dealing to determine whether or not the Ute exception applies. Austin, supra (Ute exception applied to extent plaintiff claimed nondisclosures in offering memorandum); Huddleston v. Herman & McLean, 640 F.2d 534 (5th Cir.1981), aff'd in part, rev'd in part on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (Ute exception inapplicable to claims regarding a prospectus upon characterization of case as one concerning misrepresentations); Sharp v. Coopers & Lybrand, 649 F.2d 175 (3d Cir.1981), cert. denied, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982) (Ute exception applied to claimed *629 misrepresentations in and omissions from tax opinion letter); Vervaecke, supra (Ute exception inapplicable to claimed omissions from offering statements upon characterization of case as one concerning primarily misrepresentations); Rifkin v. Crow, 574 F.2d 256 (5th Cir.1978) (Ute exception inapplicable if on remand the district court determines that claims regarding omissions from an annual report, a speech by the corporation's president, a study and several media reports focus primarily on nondisclosures). Thus, the Ute exception is not strictly limited to direct dealing situations and may be applied to this case.
Defendants further argue that the alternative basis for an exception to the actual reliance requirement, the "fraud-on-the-market" theory, is not adopted by this circuit and is not sufficiently raised by plaintiff.
Pursuant to this theory, plaintiff has a presumption of reliance to the extent plaintiff relies on the integrity of the market either to offer securities "entitled to be in the marketplace," Shores v. Sklar, 647 F.2d 462, 471 (5th Cir.1981), cert. denied, 459 U.S. 1102, 103 S.Ct. 722-23, 74 L.Ed.2d 949 (1983), or to offer securities having a price fairly reflecting their value, Blackie, supra, 524 F.2d at 906-07. Thus, reliance may be presumed if plaintiff demonstrates that defendants engaged in a scheme of material nondisclosures or misrepresentations which manipulate the market either by offering unmarketable securities, Shores, supra; Rose v. Arkansas Valley Environmental & Utility Authority, 562 F.Supp. 1180, 1201-03 (W.D.Mo.1983); see also Dekro v. Stern Bros. & Co., 540 F.Supp. 406, 413 (W.D.Mo.1982); or by offering securities at artificially distorted prices, Panzirer v. Wolf, 663 F.2d 365 (2d Cir.1981), cert. granted, 458 U.S. 1105, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982), vacated as moot, 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); Ross v. A.H. Robins Co., 607 F.2d 545, 553 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) (citing Blackie's "fraud-on-the-market" theory as applicable in actions brought under § 10b but not under § 18 of the SEA of 1934); Blackie, supra; accord Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 381 (2d Cir.1974), cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); cf. Fausett v. American Resources Management Corp., 542 F.Supp. 1234 (D.Utah 1982) (applying exception to actual reliance requirement in case involving short sales while simultaneously rejecting exception provided by "fraud-on-the-market" theory). This exception to the actual reliance requirement may be rebutted:
1) by disproving materiality or by proving that, despite materiality, an insufficient number of traders relied to inflate the price; and 2) by proving that an individual plaintiff purchased despite knowledge of the falsity of a representation, or that he would have, had he known of it.
Blackie, supra, 524 F.2d at 906 (footnote omitted).
While the Eighth Circuit has not explicitly adopted the "fraud-on-the-market" theory, this Court determines that application of the theory in this instance is not foreclosed by other decisions in this circuit. Despite defendants' argument to the contrary, the appellate court in Vervaecke, supra, neither discussed nor decided the application, if any, of this theory. See Rose, supra, 562 F.Supp. at 1202-03 n. 36. Moreover, application of this theory does not, as defendants contend, eliminate the causation-in-fact element for establishing liability under 10b-5. Instead, the theory shifts the burden of proof on the question of reliance from plaintiff to defendants.
Here, plaintiff has alleged that the favorable information provided to the public in the absence of the unfavorable information "substantially affected" the market price of MDC common stock. The amended complaint also states:
30. [Plaintiff] and other members of the class, relying on the integrity of the market purchased MDC's common stock ... during the Class Period at artificially inflated prices and were damaged thereby. *630 Had the [plaintiff] and other members of the class known of the materially adverse non-public information concerning MDC's increased costs and the probable effect of same on MDC earnings in the first quarter of 1980 and the rest of the year, [plaintiff] and other members of the class would not have purchased MDC's common stock ... at the artifically [sic] inflated prices obtaining during the Class Period. The prices paid by [plaintiff] and the members of the class for their MDC shares ... were inflated by the knowing or reckless failure of MDC and the insider sellers to disclose material non-public information and by their misrepresentations, and said prices did not reflect the fair market price of MDC stock ... based upon MDC's true financial condition and outlook.
When considered in light of the other allegations in the amended complaint, these allegations satisfactorily raise the "fraud-on-the-market" theory.
Having determined that these exceptions to proof of actual reliance apply to the claims in this case, the Court finds it inappropriate to grant defendants judgment as a matter of law. See Rose, supra. There remain genuine issues of material fact including the materiality of the information at issue here, defendants' scienter, and whether or not the presumed reliance is rebutted.
Defendants also contend that plaintiff's "insider trading" claims against the individual defendants fail because the Eighth Circuit has not explicitly adopted the "contemporaneous trading" rule for the nexus requirement.
This Court adheres to its prior determination that language in Laventhall v. General Dynamics Corp., 704 F.2d 407, 412 (8th Cir.), cert. denied, ___ U.S. ___, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983), indicates the Eighth Circuit's recognition that the "causal nexus requirement goes at least as far as the contemporaneous trading rule." Kumpis v. Wetterau, 586 F.Supp. 152 at 154 (E.D.Mo. June 27, 1983). Defendants urge this Court to reconsider its interpretation of Laventhall in light of the United States Supreme Court's subsequent decision in Dirks v. SEC, ___ U.S. ___, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983). In Dirks, the Supreme Court held that a market analyst, who received and passed on to investors inside information, had no liability under the "abstain or disclose" rule since the insider disclosing the information had not violated a fiduciary duty. Dirks reaffirmed both the need for a fiduciary relationship, which allegedly exists here, and trading by an insider for personal gain, which allegedly exists here, to assert an "insider trading" claim. The Supreme Court did not discuss or limit the application of the "contemporaneous trading" rule.
Finding that the "contemporaneous trading" rule is appropriately applied here, and that there remain genuine issues of material fact, for instance, questions regarding whether or not the trading was fraudulent, the defendants are not entitled to judgment as a matter of law.
Accordingly, defendants' joint motion for summary judgment will be denied.
Upon denial of this motion, defendants ask this Court to certify this order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which provides:
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.
(emphasis in original). While such certification should be provided in only limited situations, the Court deems that certification *631 is appropriate here. The Court determines that this order involves controlling questions of law as to which there is substantial ground for difference of opinion regarding whether, under the circumstances, (a) the Ute exception to the actual reliance requirement is applicable; (b) the "fraud-on-the-market" theory is applicable; and (c) the "contemporaneous trading" is applicable. Furthermore, the Court finds that an immediate appeal from this order may materially advance the ultimate termination of the litigation.
Under the circumstances of this case, in the interest of justice and an expeditious termination of these proceedings, further proceedings will not be stayed.
NOTES
[1] Defendants argue that Vervaecke always requires proof of actual reliance in 10b-5(b) cases. This Court disagrees. In Vervaecke, the Eighth Circuit was careful to state "it is not appropriate to apply the Affiliated Ute test to this case involving primarily misrepresentation under the second subparagraph of 10b-5 [.]" Vervaecke, supra, 578 F.2d at 717 (emphasis in original and added). The Eighth Circuit further clarified: "[w]e conclude that misrepresentations, and omissions in the nature of misrepresentations (misleading statements, half-truths), are appropriately considered alike in this case under 10b-5(2)." Id. at 717 n. 2 (emphasis added; citation omitted). By this language, the Eighth Circuit left open the possibility that proof of actual reliance would not be necessary in other cases brought under Rule 10b-5(b) when the claims focused primarily on nondisclosures.