**Wayne DINGLER and Darrell Bean**

v.

**T.J. RANEY & SONS, INC., et al.**

**Civ. No. 88–2210.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Feb. 27, 1989.

James M. Bryant, II, Little Rock, Ark., for plaintiffs.

Larry W. Burks, Friday, Eldredge & Clark, Little Rock, Ark., and John E. Pruniski, III, Hilburn, Calhoon, Harper, Pruniski and Calhoun, North Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On October 21, 1988, plaintiffs brought this proposed class action on behalf of themselves and other purchasers of limited partnership interests in El Dorado Inns Limited Partnership. The complaint in five counts alleges that the defendants violated various sections of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Arkansas Securities Act. In addition, the complaint alleges pendent state common law claims.

T.J. Raney & Sons, Inc. is a securities broker-dealer (hereinafter broker). T.J. Raney Development Company, Inc. is an Arkansas corporation operating as a real estate development company and is a general partner of El Dorado Inns. El Dorado Inns Limited Partnership (hereinafter Partnership) is a limited partnership organized and existing under the laws of the State of Arkansas, organized to own and operate the El Dorado Inn in El Dorado, Arkansas. The individual defendants are or were officers, directors, or salesmen for the broker or T.J. Raney Development Company, Inc.

On approximately October 21, 1983, Wayne Dingler and Darrel Bean, the named plaintiffs, purchased limited partnership interests. T.J. Raney & Sons, Inc. acted as underwriter for the issuance of the limited partnership interests. The complaint alleges misrepresentations of fact, omissions to state material facts, and fraud in connection with the sale of limited partnership interests in El Dorado Inns. Counts one and two contain the federal claims asserted by the plaintiffs and allege that defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), together with Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5, Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t, and Section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77l(1). The remaining claims in counts two through five are brought

under state law by virtue of the doctrine of pendent jurisdiction.

Defendant Tonie Patterson, formerly Tonie Dixon, has moved to dismiss the federal claims. The defendant contends count one, alleging violations of Section 10(b) of the 1934 Act, rule 10b–5 promulgated thereunder, and Section 20 of the 1934 Act, fails to state a claim for which relief can be granted. First, defendant states the plaintiffs have failed to allege reliance which is an essential element of any private cause of action under § 10(b) and Rule 10b–5. 17 C.F.R. § 240.10b–5, promulgated under 15 U.S.C. § 78j(b). Second, defendant maintains plaintiffs cannot rely on the presumption of reliance created by the fraud on the market theory because that theory cannot properly be extended to a fact situation involving the issuance of new limited partnership interests in an undeveloped market. Third, defendant states even if this court were to recognize the application of the fraud on the market theory to newly issued securities, the theory would be limited to allegations involving pervasive or comprehensive schemes under Rule 10b–5(a) or (c).[1] Fourth, defendant argues that the claims under Section 10(b) of the 1934 Act, Rule 10b–5, Section 20 of the 1934 Act and Section 12(1) of the 1933 Act are barred by the statute of limitations. Finally, defendant asserts the state law claims cannot survive the dismissal of the federal claims asserted in counts one and two.

On the other hand, plaintiffs contend they have alleged causation on three separate theories. Initially, they note paragraph 56 of the complaint specifically states that plaintiffs "relied upon not knowing the omissions of material facts contained in or properly speaking, omitted from the offering memorandum, standardized sale literature and pitches ... all in connection with their purchase of the limited partnership interests and the lulling and concealment activity." Next, plaintiffs assert they have alleged reliance under the omission presumption established by *Affiliated Ute Citizens v. United States*, 406

U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), and under the fraud on the market theory. Plaintiffs further note that although the Court of Appeals for the Eighth Circuit has not yet determined whether the fraud on the market theory is applicable to initial offerings, in *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983), the Fifth Circuit has applied this theory to initial securities offerings. Finally, plaintiffs assert that the applicable statute of limitations is five years and that the actions are thus timely.

### Reliance

It is well settled that *reliance* is an element of a Rule 10b–5 cause of action. *Basic Incorporated v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *St. Louis U. Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040, 1048 (8th Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978). Causation in fact is analyzed under § 10(b) and Rule 10b–5 in terms of reliance. Thus, reliance provides the requisite causal connection between the defendant's wrongful conduct and the plaintiff's loss. *St. Louis U. Trust Co.*, 562 F.2d at 1048. There is, however, more than one way to demonstrate reliance.

Traditionally, the plaintiff demonstrated reliance by "proof that the misrepresentation or omission actually induced the plaintiff to act differently than he would have acted in his investment decision." *St. Louis U. Trust Co.*, 562 F.2d at 1048. The second method was articulated by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) and applies to cases alleging a failure to disclose i.e. omissions cases. The court stated:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prereq-

---

**1.** Rule 10b–5 contains three subparagraphs. These subparagraphs have been denoted as "a" through "c" or 1 through 3.

uisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor *might* have considered them important in the making of his decision. (citations omitted). This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.

*Affiliated Ute,* 406 U.S. at 153–54, 92 S.Ct. at 1472 (emphasis added). The presumption created by *Affiliated Ute* is regarded as a rebuttable presumption and is used when for one reason or another direct proof is rendered difficult. *Basic Incorporated,* 485 U.S. at ——, 108 S.Ct. at 989; *St. Louis U. Trust Co.,* 562 F.2d at 1049. *See* L. Loss, *Fundamentals of Securities Regulation,* 960 (2d Ed.1988). The courts have held that lack of reliance is a defense. In fact in *Shores v. Sklar* the court held plaintiff's admission that he did not read or otherwise rely on the offering circular was enough to rebut the presumption in a rule 10b–5(b) case. *Shores,* 647 F.2d at 468. Additionally, the presumption is rebutted if the defendant is able to establish that plaintiff's decision would have been the same even if the omitted information had been disclosed. *Lipton,* 734 F.2d at 742.

The third method is commonly referred to as the "fraud on the market" theory. This theory was fully articulated for the first time by the Court of Appeals for the Ninth Circuit in *Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). In *Peil v. Speiser,* 806 F.2d 1154 (3d Cir.1986), the court succinctly summarized the theory as follows:

The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiff's purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Peil v. Speiser,* 806 F.2d at 1160–1161; *Basic Incorporated,* 485 U.S. at —— ——, 108 S.Ct. at 988–990. (quoting above passage from *Peil v. Speiser*).

In *Basic Incorporated* the Supreme Court noted:

The presumption of reliance employed in this case is consistent with, and, by facilitating Rule 10b–5 litigation, supports, the congressional policy embodied in the 1934 Act. In drafting that Act, Congress expressly relied on the premise that securities markets are affected by information, and enacted legislation to facilitate an investor's reliance on the integrity of those markets:

'No investor, no speculator, can safely buy and sell securities upon the exchanges without having an intelligent basis for forming his judgment as to the value of the securities he buys or sells. The idea of a free and open public market is built upon the theory that competing judgments of buyers and sellers as to the fair price of a security brings [sic] about a situation where the market price reflects as nearly as possible a just price. Just as artificial manipulation tends to upset the true function of an open market, so the hiding and secreting of important information obstructs the operation of the markets as indices of real value.' H.R.Rep. No. 1383, *supra,* at 11.

See *Lipton v. Documation, Inc.,* 734 F.2d 740, 748 (CA11 1984), cert. denied, 469 U.S. 1132 [105 S.Ct. 814, 83 L.Ed.2d 807] (1985).

The presumption is also supported by common sense and probability. Recent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations. It has been noted that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?' *Schlanger v. Four–Phase Systems, Inc.,*

555 F.Supp. 535, 538 (SDNY 1982). Indeed, nearly every court that has considered the proposition has concluded that where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed. Commentators generally have applauded the adoption of one variation or another of the fraud-on-the-market theory. An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action.

*Basic Incorporated,* 485 U.S. at —— ——, 108 S.Ct. at 990–992 (footnotes omitted).

The cases applying the fraud on the market theory can arguably be divided into several categories. *See Nelsen v. Craig–Hallum, Inc.,* 659 F.Supp. 480 (D.Minn. 1987); *Rose v. Arkansas Valley Envtl. & Util. Auth.,* 562 F.Supp. 1180, 1201 n. 3 (W.D.Mo.1983). The first scenario is described in *Blackie, Peil,* and *Basic Incorporated. Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Peil v. Speiser,* 806 F.2d 1154, 1160 (3d Cir.1986); *Basic Incorporated v. Levinson,* 485 U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). In the traditional fraud on the market cases, plaintiffs allege the defendants' practices have resulted in upward manipulation of the price of stocks actively traded on the open market. The presumption thus is premised on the efficient market hypothesis. In this context, the purchaser "relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price—whether he is aware of it or not, the price he pays reflects material misrepresentations." *Blackie v. Barrack,* 524 F.2d 891, 907 (9th Cir.1975). "Plaintiff estab-

lishes a prima facie case by showing that she purchased the security and that the misrepresentation (or other deception) was material." *Ross v. Bank South, N.A.,* 837 F.2d 980, 993 (11th Cir.1988).

As in a *Ute* omission case, the presumption of reliance in a *Blackie* fraud on the market case is rebuttable. Defendant can rebut the presumption either by disproving materiality or by proving that; (1) despite materiality, an insufficient number of traders relied on the deception so as to inflate the price; or (2) the individual plaintiff purchased despite knowledge of the deception; or (3) the plaintiff would have purchased even if he had known of the deception. *Blackie,* 524 F.2d at 906.

*Ross,* 837 F.2d at 993. It is this version of the fraud on the market theory that was approved by the Supreme Court in *Basic, Incorporated, supra.* The theory is regarded as being "most sound where it is used in the context of class actions to eliminate the necessity of each class member proving subjective reliance and where the securities were traded on a developed and open market, so that market prices reflect available information about the corporation." *Lipton v. Documation, Inc.,* 734 F.2d 740, 743 (11th Cir.1984).

The second category of fraud on the market cases are those in which the "plaintiff alleged that a fraudulent proxy statement was one step in a scheme to manipulate stock prices to establish an unfair exchange ratio in a forced merger." *Frankel v. Wyllie & Thornhill, Inc.,* 537 F.Supp. 730, 736 (W.D.Va.1982). In this situation the plaintiff need not prove reliance since his action was not voluntary. *See Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). *See also Nelsen v. Craig–Hallum, Inc.,* 659 F.Supp. 480, 483 n. 2 (D.Minn.1987); *Rose v. Ark. Val. Environ. & Utility Auth.,* 562 F.Supp. 1180, 1201, n. 34 (W.D.Mo.1983).

The third and most controversial category of cases are those in which the plaintiff seeks to apply the fraud on the market theory to an undeveloped securities market. This version is sometimes referred to

as the "fraud created the market" theory. The seminal case in this area is *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (En banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983).

In *Shores* the plaintiff alleged a pervasive fraudulent scheme designed to induce a municipality to issue, and the public to buy, otherwise unmarketable municipal bonds. *Shores*, 647 F.2d at 462. Notwithstanding plaintiffs admitted failure to read the offering circular, the court held plaintiff stated a cause of action under the broader language of rule 10b–5(a) and (c). The court held that the plaintiff's "burden of proof will be to show that (1) the defendants knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers, (2) [Plaintiff] reasonably relied on the Bonds' availability on the market as an indication of their apparent genuineness, and (3) as a result of the scheme to defraud, he suffered a loss." *Shores*, 647 F.2d at 469–70. In doing so, the court noted "the purposes of the securities acts and rule 10b–5 are far broader than merely providing full disclosure or fostering informed investment decisions. The Supreme Court has held that the acts were designed 'to protect investors against fraud and ... to promote ethical standards of honesty and fair dealing.' *See* H.R.Rep. No. 85, 73d Cong., 1st Sess., 105 (1933)." *Shores*, 647 F.2d at 470, *quoting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). *See also Ross v. Bank South, N.A.*, 837 F.2d 980 (11th Cir.1988); *T.J. Raney & Sons, Inc. v. Fort Cobb Oklahoma Irrig. Fuel Authority*, 717 F.2d 1330 (10th Cir. 1983) (adopting *Shores*), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984); *Frankel v. Wyllie & Thornhill, Inc.*, 537 F.Supp. 730 (W.D.Va.1982) (adopting the theory of liability characterized by *Shores v. Sklar*).

"Accordingly, a prima facie showing of reliance is established in a *Shores* type case upon proof of a scheme to bring securities onto the market which were not entitled to be marketed." *Ross*, 837 F.2d at 994. *Shores* made clear that the fraud must be "so pervasive that without it the issuer would not have issued, the dealer could not have dealt in, and the buyer could not have bought these [securities], because they would not have been offered on the market at any price." *Shores*, 647 F.2d at 464 n. 2. Thus, the plaintiff must establish that the securities would never have been issued or marketed. *Ross*, 837 F.2d at 994–95; *Shores*, 647 F.2d at 470.

"If plaintiffs employ a fraud on the market theory, individual issues of reliance virtually disappear because a sufficient causal link is established by the mere presence of the [securities] in the marketplace. Individual questions of knowledge and reliance simply become irrelevant." *Dekro v. Stern Bros. & Co.*, 540 F.Supp. 406, 417 (W.D.Mo. 1982) (applying *Shores*).

A *Shores* defendant can rebut the presumption of reliance only by showing that the plaintiff's reliance was not reasonable. Reliance on the market is reasonable so long as the plaintiff did not intentionally refuse to investigate known or obviously present risks associated with the bonds. *Shores*, 647 F.2d at 470 n. 6 (quoting *Dupuy v. Dupuy*, 551 F.2d [1005] at 1020 [ (5th Cir.1977) ]. This rebuttal could include a showing that "an individual plaintiff purchased despite knowledge of the falsity of a representation, or that he would have, had he known of it." *Blackie*, 524 F.2d at 906. Unless the defendant shows a compelling reason, such as plaintiff's inside information regarding the fraud or unreasonable failure to investigate, defendant has not rebutted the general presumption that investors rely on the integrity of the market to produce bonds which are entitled to be marketed.

*Ross*, 837 F.2d at 995. Application of the fraud on the market theory to newly issued securities has been criticized. *See for example The Fraud-on-the-Market Theory*, 95 Harv.L.Rev. 1143, 1156–1158. (On efficient-market principles, the *Shores* version of the fraud-on-the-market theory seems unsound).

■ Both parties correctly point out that the Court of Appeals for the Eighth Circuit

has not specifically decided whether the fraud in the market theory is applicable to newly issued securities. The Eighth Circuit appears to have recognized the validity of the theory in general in *Harris v. Union Elec. Co.*, 787 F.2d 355, 367 n. 9 (8th Cir. 1986), *cert. denied*, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986). However, *Vervaecke v. Chiles, Heider & Co., Inc.*, 578 F.2d 713 (8th Cir.1978) has been read as a rejection of the theory on newly issued securities. *See T.J. Raney & Sons v. Fort Cobb, Okl. Irr. Fuel*, 717 F.2d 1330, 1333 (10th Cir.1983); *Svenningsen v. Piper, Jaffray & Hopwood, Inc.*, Fed.Sec.L.Rep.Par. 92,854 at 94,149 (D.Minn.1986) [1986 WL 9960] (available on Lexis) (refusal to apply standard where plaintiff's chief complaint concerns misrepresentations); *HSL, Inc. v. Daniels*, Fed.Sec.L.Rep. (CCH) Par. 99,557 (N.E.Ill.1983) [1983 WL 1385] (available on Lexis). *But see Nelsen v. Craig–Hallum, Inc.*, 659 F.Supp. 480, 484 n. 3 (D.Minn. 1987) (*Vervaecke* does not refer to the "fraud on the market theory", nor does it cite any of the earlier cases discussing the theory. The parties may not have argued the theory to the court at all.); *Biben v. Card*, Fed.Sec.L.Rep. (CCH) 92,010 at 91,-000 (W.D.Mo.1985) (*Vervaecke* did not reject the fraud on the market theory); *In re McDonnell Douglas Corp. Secur. Litigation*, 587 F.Supp. 625, 627 n. 1 (E.D.Mo. 1983) (same); *Rose v. Arkansas Valley Envtl. & Util. Auth.*, 562 F.Supp. 1180, 1202 n. 36 (W.D.Mo.1983) (same).

In *Vervaecke* the plaintiff argued that the reliance-causation rule found in *Affiliated Ute* was applicable to his case. The court found that it was "not appropriate to apply the *Affiliated Ute* test to this case involving primarily *misrepresentation* under the second subparagraph of Rule 10b–5." *Vervaecke*, 578 F.2d at 717. The court then quoted from a law review article to the effect that:

> [I]n affirmative misrepresentation cases there is no need to presume reliance; the lack of barriers to proof permits the compensatory and deterrent purposes to be adequately served by testing causation directly.

*Vervaecke*, 578 F.2d at 717, *quoting The Reliance Requirement in Private Actions under SEC Rule 10b–5*, 88 Harv.L.Rev. at 591 (1975) (emphasis added). The court further concluded "that misrepresentations, and omissions in the nature of misrepresentations (misleading statements, half-truths), are appropriately considered alike in this case under 10b–5(2)." *Vervaecke*, 578 F.2d at 717 n. 2. In this court's opinion *Vervaecke* did not reject the fraud on the market theory in cases which do not involve primarily fraudulent misrepresentation. *See In re McDonnell Douglas Corp. Securities Litigation*, 587 F.Supp. 625 (E.D.Mo.1983).

Categorizing plaintiffs' complaint is not an easy task. As one court has noted:

> Clearly ... every misrepresentation involves also a failure to disclose, "at least to the extent that there is a failure to disclose which facts in the representation are not true." *Little v. First–California Co.*, 532 F.2d 1302, 1304 (9th Cir.1976). Differentiating between "misrepresentations" and "omissions" is thus not an easy task, particularly where, as here, the two are intertwined in the alleged comprehensive scheme to defraud. Proof of reliance on a particular misrepresentation should not be necessary in such a case.

*Frankel*, 537 F.Supp. at 739 (citations omitted). In the case at bar, plaintiffs have alleged numerous misrepresentations and omissions on the part of all the defendants. However, a review of plaintiffs' complaint, taken as a whole, reveals that this is primarily a case involving failures to disclose material facts. Plaintiffs have alleged that the defendants implemented a scheme to market "unmarketable" securities. Accordingly, the holding of *Vervaecke* is not applicable here since this is not a case involving primarily affirmative misrepresentations.

As previously noted, defendant Patterson has moved, pursuant to Rule 12(b), to dismiss plaintiffs' complaint as failing to state a claim against her upon which relief can be granted. In light of the previous overview of the fraud on the market theory, the

court will address the defendants' arguments.

Defendant first contends that despite the well-settled reliance requirement the plaintiffs have failed to allege they actually read or relied on the Confidential Private Placement Memorandum or the information contained therein or relied on the alleged statements by defendant Dixon. In response plaintiffs point out that paragraph 56 specifically pleads reliance "upon not knowing the omissions of material facts contained in or properly speaking, omitted from the offering memorandum, standardized sales literature and pitches." In addition, plaintiffs state they have plead two alternative reliance presumptions, *i.e. Affiliated Ute* and fraud on the market. The court believes that the two alternative theories of causation are available and either one offers a sufficient reason to deny the motion to dismiss.

First, since plaintiffs case is primarily an omissions case plaintiffs can rely on the presumption of reliance created by *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). This presumption clearly applies to non-disclosure cases brought pursuant to Rule 10–b5(b). *See Affiliated Ute*, and *Vervaecke, supra.* Of course, at a later stage in the proceedings defendants will have the opportunity to rebut this presumption. Next, the court believes the plaintiffs' complaint can fairly be construed to state a fraud on the market theory. Thus, the burden will be on the plaintiffs to demonstrate that if the truth had been known the limited partnership interests would have been unmarketable.

If the plaintiffs can meet this burden a sufficient causal connection will be demonstrated. *See Dekro v. Stern Bros. & Co.*, 540 F.Supp. at 413. The Court of Appeals for the Eighth Circuit has recognized that reliance, i.e. the causal connection may be proved by different means in different types of transactions. *See Harris v. Union Elec. Co.*, 787 F.2d 355 (8th Cir.1986); *Vervaecke v. Chiles, Heider & Co., Inc.*, 578 F.2d 713 (8th Cir.1978); *St. Louis U. Trust Co. v. Merrill Lynch, Etc.*, 562 F.2d

1040 (8th Cir.1977). *See also Dekro v. Stern Bros. & Co.*, 540 F.Supp. 406 (W.D. Mo.1982). In *Vervaecke* the court stated the less stringent test of causation [found in *Affiliated Ute*] is functionally important in the case of material non-disclosure. *Vervaecke*, 578 F.2d at 717. This same reasoning applies to cases brought under Rule 10–b5(a) and (c). Without the presumption of reliance created by the fraud on the market theory a class action would be virtually unavailable in cases similar to the one at bar.

*Particularity*

■ Defendant argues that the fraud on the market theory is applicable only to subsections (a) and (c) of Rule 10b–5 rather than upon subsection (b) citing *Shores v. Sklar*, 647 F.2d 462, 464 n. 2 (5th Cir.1981); *Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F.Supp. 1180, 1201–03 n. 36 (W.D.Mo.1983); *Dekro v. Stern Bros. & Co.*, 540 F.Supp. 406, 413 (W.D.Mo.1982). With respect to count one, defendant then proceeds to argue that the plaintiffs have not alleged, with the required particularity, sufficient facts to support a claim based on Rule 10b–5(a) or (c).

In support, defendant cites *Beissenger v. Rockwood Computer Corp.*, 529 F.Supp. 770, 786 (E.D.Pa.1981), to the effect that "in order to prevail under [the fraud on the market] theory, plaintiffs must establish that defendants engaged in 'a *comprehensive scheme* to defraud which includes not only omissions and misrepresentations, but substantial collateral conduct as well.'" *Beissinger*, 529 F.Supp. at 786 (citations omitted). However, the court in *Beissinger* is referring to plaintiffs' ultimate burden at trial and not to pleading requirements under Rule 9(b). Fed.R.Civ.P. 9(b). Although conclusory allegations that a defendant's conduct was fraudulent and deceptive are not enough to satisfy Rule 9(b), it is sufficient for a claimant to set forth the time, place and circumstances of the alleged fraudulent activities. *Antinore v. Alexander & Alexander Services, Inc.*, 597 F.Supp. 1353, 1363 (D.Minn.1984). In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539

(1975) Justice Rehnquist in speaking of the possibility of vexatious litigation under Rule 10b–5 observed that:

> [I]n the field of federal securities laws governing disclosure of information even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment. The very pendency of the lawsuit may frustrate or delay normal business activity of the defendant which is totally unrelated to the lawsuit.

*Blue Chip Stamps,* 421 U.S. at 740, 95 S.Ct. at 1927. Further, Justice Rehnquist observed that the possibility of "strike suits" together with the liberal federal discovery provisions result in "in terrorem" increments in settlement value. *Id.* at 740–41, 95 S.Ct. at 1927–28.

Because of the possibilities for abuse, some courts have insisted that a complaint alleging fraudulent violation of Rule 10b–5 satisfy the particularity requirement of Fed.R.Civ.P. 9(b). *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir. 1982). Clearly, the particularity requirement becomes more onerous in a case alleging primarily omissions rather than misrepresentations. However, based upon a review of the amended complaint the court believes the bulk of the amended complaint makes only vague allegations without adequately apprising defendants of the time, place, and circumstances of the activities which allegedly constitute fraud. Dismissal, however, is too harsh a remedy in this case. Instead, plaintiffs will be allowed to amend their complaint. In addition, plaintiffs must state whether each defendant is alleged to be primarily or secondarily liable under Section 10(b). *See Stokes v. Lokken,* 644 F.2d 779, 782–783 (8th Cir.1981); *Antinore v. Alexander & Alexander Services, Inc.,* 597 F.Supp. 1361 (D.Minn.1984).

*Statute of Limitations*

The defendant contends that plaintiffs' claims under Sections 10(b) and 20 of the 1934 Act, Rule 10b–5 and Section 12(1) of the 1933 Act are barred by the statute of limitations. In response, plaintiffs state that the applicable statute of limitations in actions brought under the anti-fraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934, including Section 10(b) is the appropriate local law of limitations. *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.1970), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). Plaintiffs assert the applicable state statute Ark.Stat.Ann. § 67–1256 provides for a five year limitations period.

■ In count two plaintiffs allege violations of § 12(1) of the 1933 Act, 15 U.S.C. § 77*l* (1). Section 12(1) provides a cause of action for violation of the registration requirements of the 1933 Act. The applicable statute of limitations for Section 12(1), appears in Section 13, 15 U.S.C. § 77m, which requires an action to enforce liability to be brought "within one year after the violation upon which it is based" but "in no event" shall such action be brought "more than three years after the security was *bona fide* offered to the public." 15 U.S.C. § 77m. "The one and three years limitations periods are not meant to be read alternatively, but cumulatively." *Stone v. Fossil Oil & Gas,* 657 F.Supp. 1449, 1456 (D.N.M.1987).

In *LeCroy v. Dean Witter Reynolds,* the court concluded as a matter of law that:

> [T]he one and three-year limitations periods contained in Section 13 are cumulative, not alternative. *See Osborne v. Mallory,* 86 F.Supp. 869, 873–74 (S.D.N.Y.1949); [L. Loss *III Securities Regulation,*] Ch. II(c)(1)(f)(i) at p. 1742, n. 188. Therefore, the plaintiff must be able to demonstrate not only that she filed her action within one year of the Section [12(1)] violation, but also that the filing occurred within three years after the securities were first bona fide offered to the public. If she fails to meet either limitation period, her cause of action is time-barred.

*LeCroy v. Dean Witter Reynolds, Inc.,* 585 F.Supp. 753 (E.D.Ark.1984). Plaintiffs concede the date of the sales contract was

October 21, 1983. Accordingly, the plaintiffs' action under § 12(1) is untimely.

The 1934 Act, however, does not provide a limitations period for actions alleging violations of Section 10(b) or Rule 10b–5. In the absence of a federal statute of limitations "the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). This results, of course, in a great amount of litigation and the application of a wide range of limitation periods. *See* L. Loss, *Fundamentals of Securities Regulation* (1988) at 992–1003.

As Judge Easterbrook stated:

This is one tottering parapet of a ramshackle edifice. Deciding which features of state periods of limitation to adopt for which federal statutes wastes untold hours. *Tellis v. United States Fidelity & Guaranty Co.,* 805 F.2d 741, 747 (7th Cir.1986) (Ripple, J., dissenting). Never has the process been more enervating than in securities law. There are many potentially analogous state statutes, with variations for different kinds of securities offenses and different circumstances that might toll the period of limitations. Both the bar and scholars have found the subject vexing and have pleaded, with a unanimity rare in the law, for help. E.G., Louis Loss, *Fundamentals of Securities Regulation* 1164–75 (1983); Thomas Lee Hazen, *The Law of Securities Regulation* § 13.8 & n. 2 (1985) (collecting authority); *Report of the Task Force on Statute of Limitations for Implied Actions,* 41 Bus.Law. 645 (1986). *Norris v. Wirtz,* 818 F.2d 1329, 1332 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987).

As practitioners and scholars agree that the result is a mess, they also believe that the courts missed a turn. Courts should have drawn the periods of limitations for the implied rights from the periods of limitations for the express rights. Congress has not been silent about limitations for securities law in general, the usual problem that leads federal courts to turn to state law; it has been silent only with respect to rights of action it did not create. Whenever it created a federal right to sue, it also created a statute of repose no longer than three years. That is what the courts should have used. As professor Loss puts it:

This reference to state law makes for a great amount of utterly wasteful litigation.... Would it not be eminently more consistent with the overall statutory scheme to look to what Congress itself did when it was thinking specifically of private actions in securities cases than to a grab-bag of more or less analogous state statutes?

*Fundamentals of Securities Regulation* at 1168–69. *Norris,* 818 F.2d at 1333. As Professor Loss notes the implication of actions under the SEC statutes have resulted in *at least* 500-odd possible answers. L. Loss, *Fundamentals of Securities Regulation* (1988) at 994.

In *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.1970), the court states the appropriate statute should be the "one which best effectuates the federal policy at issue." *Vanderboom,* 422 F.2d at 1237. After examining the two competing local statutes of limitations, each of which arguably "best effectuates the federal policy at issue," the Arkansas statute governing common law fraud and the one pertaining to actions based on the state's blue sky law, the Eighth Circuit held that the Arkansas blue sky statute bore the closest resemblance to Section 10(b). *Vanderboom,* 422 F.2d at 1238–39. *See also Morris v. Stifel, Nicolaus & Co.,* 600 F.2d 139 (8th Cir.1979) (facing the *Vanderboom* issue in the context of Missouri law). At the time of the *Vanderboom* decision Ark.Stat. Ann. § 67–1256(e) (Repl.1966) provided for a two year statute of limitations. *Vanderboom,* 422 F.2d at 1237. After *Vanderboom* the statute was amended to provide for a five year limitation period. *See* Ark. Stat.Ann. § 67–1256(e) (Repl.1980) now codified at Ark.Code ann. § 23–42–106(f) (1987).

Defendant now argues that the Supreme Court's ruling in *Agency Holding Corp. v.*

*Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) requires a re-examination of the application of state statutes of limitation. In fact, defendant requests this court to apply a uniform federal statute of limitations. Defendant points out that the Court of Appeals for the Third Circuit sitting *en banc* held on the authority of *Malley–Duff* that a uniform federal statute of limitations should apply. *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.1988). The court concluded that the federal scheme of limitations set forth in the Securities Exchange Act of 1934 clearly provided a closer analogy than state statutes. *Id.* at 1545.

In *Agency Holding Corp. v. Malley– Duff & Associates, Inc.,* the Supreme Court applied a two step analysis to its determination of the appropriate statute of limitations to be applied to civil RICO actions. "[T]he initial inquiry is whether all claims arising out of the federal statute 'should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case.'" *Agency Holding Corp.,* 107 S.Ct. at 2762, *quoting, Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). The second inquiry is "whether a federal or state statute of limitations should be used." *Agency Holding Corp.,* 107 S.Ct. at 2762. The court began its analysis by noting that in some limited circumstances "'state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law.'" *Id.* at 2762, *quoting, Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). The court further noted that the courts have not adopted a consistent approach to selecting the appropriate statute of limitations for civil RICO resulting in confusion, inconsistency and unpredictability. *Agency Holding Corp.,* 107 S.Ct. at 2763.

The court after noting that the civil RICO provisions had been modeled after the Clayton Act, 15 U.S.C. § 15, concluded that the statute of limitations under the Clayton Act offered the closest analogy to civil RICO. *Id.* at 2764–65. The court reached this conclusion noting that:

> [T]he similarities in purpose and structure between RICO and the Clayton Act, the clear legislative intent to pattern RICO's civil enforcement provision on the Clayton Act strongly counsels in favor of application of the 4–year statute of limitations used for Clayton Act claims. 15 U.S.C. § 15b. This is especially true given the lack of any satisfactory state law analogue to RICO.

*Id.* at 2765.

As previously noted the Third Circuit, sitting *en banc* and thus unhindered by prior precedent, concluded that a federal rule clearly provided a closer analogy than state statutes. Accordingly, the court adopted for Section 10(b) and Rule 10b–5 cases a statute of limitations of "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *In re Data Access Sys. Sec. Litigation,* 843 F.2d 1537, 1550 (3d Cir.1988) (en banc). *See also Kayne v. Painewebber, Inc.,* 703 F.Supp. 1334 (N.D.Ill.1989). Subsequently, the Third Circuit in *Hill v. Equitable Trust Co.,* 851 F.2d 691, 698 (3d Cir.1988) *cert. denied,* — U.S. ——, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989), gave retrospective application to the *Data Access* at least on the facts of that case. *Hill,* 851 F.2d at 698.

In *Kayne v. Painewebber, Inc.* the court found the reasoning in *Data Access* to be compelling but declined to give retrospective application to the newly adopted single limitations period for Section 10(b) and Rule 10b–5, *Kayne v. Painewebber, Inc.,* 703 F.Supp. 1334 (N.D.Ill.1989). Two other courts faced with this issue subsequent to the *Agency Holding v. Malley–Duff* decision have declined to adopt a uniform federal statute of limitations. *See Durham v. Business Management Associates,* 847 F.2d 1505 (11th Cir.1988); *TCF Banking and Sav., F.A. v. Arthur Young & Co.,* 697 F.Supp. 362 (D.Minn.1988). In *Durham* the court noted the *Data Access* precedent but without further discussion

affirmed the district court's application of the states two year statute of limitations. *Durham*, 847 F.2d at 1508.

In *TCF Banking and Saving* the court was faced with the identical argument presented here. After a thorough analysis of the *Malley–Duff* and *Data Access* decisions the court noted that "*Vanderboom* establishes clear and settled precedent and, in the Court's opinion, the doctrine of *stare decisis* forecloses a decision in favor of [the defendant] on this motion." *TCF Banking and Sav.*, 697 F.Supp. at 366.

This court is forced to agree with that conclusion. Despite the compelling reasoning set forth by the Third Circuit in *Data Access*, this court is not free to ignore established precedent in this circuit. The Court of Appeals for the Eighth Circuit has not addressed the limitations period applicable to Section 10(b) or Rule 10b–5 since the *Malley–Duff* and *Data Access* decisions and until it does the *Vanderboom* decision dictates application of the state statute of limitations. In any event, application of a uniform federal statute of limitations would not have resolved the issue in favor of the defendant. A second hurdle *i.e.* whether the federal limitation period would be applied retrospectively, would have had to be crossed. *See Kayne v. Painewebber, Inc.*, 703 F.Supp. 1334 (N.D.Ill., 1989). As defendant concedes the complaint was filed within five years the action is timely under the current provision in Ark.Code Ann. § 23–42–106(f) (1987).

Finally, defendant contends the state law claims should be dismissed. Defendant urges the court to dismiss the state law claims in order to avoid the likelihood of jury confusion in treating divergent legal theories of relief. In addition, defendant states further difficulties may be presented in view of the fact plaintiffs seek to pursue a class action. In that event, defendant asserts the state law claims may require application of the standards of liability of the state in which each purchase was transacted. At this stage in the litigation, the court declines to evaluate "potential problems" that may develop in the litigation. Accordingly, the state law claims will not

be dismissed. However, as the exercise of pendent jurisdiction remains an ongoing issue throughout the pendency of the case, defendant may wish to raise this argument at a later stage in the proceedings.